679 P.2d 147

**Charles BRIGHAM, Plaintiff-Appellant,**

v.

**DEPARTMENT OF HEALTH AND WELFARE, Defendant-Respondent.**

No. 14747.

Supreme Court of Idaho.

April 4, 1984.

Fred J. Hahn and Michael D. Crapo, Idaho Falls, for plaintiff-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, Joseph B. Jones, Deputy Atty. Gen., Idaho Falls, for defendant-respondent.

HUNTLEY, Justice.

By this appeal we are asked to determine the scope of procedural rights due a probationary employee upon dismissal under the Idaho Personnel System Act.

The facts are as found by the Idaho Personnel Commission hearing officer and as supplemented by stipulation of the parties.

Charles Brigham was hired as director of maintenance and operations at State Hospital South, Idaho Department of Health and Welfare, in August, 1979. Mr. George Bachik, the director of State Hospital South, and Mrs. Althea Toland interviewed Brigham and explained that the new maintenance and operations director would be expected to function differently than the previous one, with primary responsibility for developing a preventative maintenance system and revising the operations of the department to make it more efficient. Brigham had an extensive background in the operation of complex machinery, but he was not familiar with the type of boilers used at the hospital. Nevertheless he assured his interviewers that he was capable of running this phase of the operation.

No job description was ever prepared for Brigham, nor was his performance in the job ever formally evaluated. Shortly after beginning work he did find a copy of a 1979 Job Related Job Description (JRJD), prepared for his predecessor, but it is not contended it applies to Brigham. He was told verbally on more than one occasion that his job performance was inadequate. Bachik notified Brigham in writing in December, 1979 that he was being discharged due to unsatisfactory performance, based largely on his lack of knowledge of the machinery he was in charge of. Brigham was not given an opportunity to resign prior to the dismissal. After Brigham was dismissed the hospital director prepared an evaluation regarding Brigham's perform-

ance, based on a superceded 1977 job description which Brigham had never seen.

Brigham filed grievances with the Department of Health and Welfare which were denied. He appealed to the Personnel Commission and his case was assigned to a hearing officer who ruled against him. That decision was reviewed by the Commission which found that the dismissal was substantively justified but procedurally defective in that Brigham should have been allowed to resign prior to being fired. As a remedy the Commission ordered the Department of Health and Welfare to allow Brigham to resign within 20 days with correction and expungement of his employment records should he exercise the opportunity. He was also awarded one month's wages as damages. Upon appeal to the district court, Brigham did not take issue with the ruling regarding the lack of opportunity to resign, but he argued that the failure of the director to provide him with a Job Related Job Description and an evaluation based on that JRJD violated his procedural rights as a classified employee under the Idaho Personnel System Act and regulations and constituted a breach of the contract of employment. The district court affirmed the Commission's decision and Brigham took an appeal to this Court alleging the same grounds as in the district court appeal.

All Idaho state employees, unless specifically exempted, are "classified" employees, *see* I.C. § 67–5302; as such they are subject to the requirements and entitled to the protections of the Idaho Personnel System Act, I.C. § 67–5303. An employee's statutory rights are implicitly included in his or her contract of employment.

The position held by Brigham is classified. It is not exempted under I.C. § 67–5303, and it fits within the definition of "classified" set forth in I.C. § 67–5302(4):

"Classified officer or employee" means any person appointed to or holding a position in any department of the state of

Idaho which position is subject to the provisions of the merit examination, selection, retention, promotion and dismissal requirements of chapter 53, title 67, Idaho Code.

That the position held by Brigham was for a probationary period has no effect on its classified status. Probationary employees are specifically referenced in I.C. § 67–5309(j)[1] and their rights are defined by the Act. Our inquiry is to determine the scope of the procedural protections afforded a probationary employee under the Act and his remedies when those procedures are not followed.

 Unless specifically exempted from any of the rights accorded to all classified employees, probationary employees are entitled to the full range of procedural rights set forth in the Act. The only right so denied probationary employees is the right to appeal a dismissal based on unsatisfactory performance. *See* I.C. § 67–5309(j). It is therefore clear that probationary employees are entitled to job descriptions and evaluations.

I.C. § 67–5309(a) requires the personnel commission:

> to develop, adopt, and make effective, a classification plan *for positions covered by this act,* based upon analysis of the duties and responsibilities of the position. The classification plan will include an appropriate title for each class, and a *description of duties and responsibilities* of positions in the classes and requirements of minimum training, experience and other qualifications, suitable for the performance of duties of the position. (Emphasis added).

The plan so adopted and its purpose are set forth in I.P.C. Rule 21:

1. **"Rules of the personnel commission.—**The commission shall have the power and authority to adopt, amend, or rescind such rules and regulations as may be necessary for proper administration of this act. Such rules shall include:

. . . .

(j) A rule establishing a probation period not to exceed a stipulated period of time, and for the appointing authority to notify the commission and the employee in writing prior to the expira-

The purpose of performance evaluation is to provide an objective evaluation by the immediate supervisor of an employee's performance in comparison with *established work standards* for the position; and to identify an employee's strengths and weaknesses and where improvement is necessary. *It shall be used in connection with promotions, demotions, merit increases, separations and reassignments.* All ratings shall be discussed with the affected employee who shall be allowed opportunity to submit comments regarding the rating. I.P.C. Rule 21.A.2. (Emphasis added).

 The fact that job descriptions had been created for Brigham's predecessor does not fulfill the above requirements. Brigham had been explicitly told during his hiring interview that he would be expected to operate in a different fashion than the former maintenance director, making the prior job description, created especially for his predecessor, inapplicable to Brigham. No means of objective evaluation of Brigham's performance was provided.

 Evaluations are mandatory on a yearly basis, and they are also required "in connection with promotions, demotions, retentions, separations and reassignments." I.C. § 67–5309(g). Clearly, Brigham should have been formally evaluated against a JRJD and given an opportunity to improve his performance in accord with established work standards before being dismissed. The after the-fact application of an outdated and inapplicable JRJD and an evaluation made after the dismissal by the director of State Hospital South did not satisfy the statutory requirements.

tion of the probationary period concerning satisfactory or unsatisfactory performance. Employees who during the probationary period are performing in an unsatisfactory manner may be asked to resign and, upon failure to submit such resignation, may be discharged without the right of appeal. The appointing authority must notify the commission and the employee in writing in order for the probationer to become a permanent employee.

■ These procedural violations manifestly affected Brigham's substantive rights. He was dismissed for inadequate performance of his job, yet he was never given a job description and never formally evaluated. We cannot say what the result would have been had the proper procedures been followed, but at a minimum employer and employee would have been operating from the same set of assumptions and expectations regarding the job of maintenance director. Failure to provide the required job description and evaluation deprives the employee of a fair chance to meet the expectations of those who hired him and gives the employer the means to make arbitrary and capricious decisions, and runs counter to the purpose and intent of the Personnel System Act. The failure by the state to comply with the statutory procedure constitutes a breach of the employment contract.

■ Having established a breach of contract of employment, the next question is to determine whether Brigham is entitled to any damages other than those already awarded. He seeks reinstatement at what would be his present pay grade, damages caused by a loss of use of state owned living facilities, reimbursement for damages caused by loss of medical insurance and full back pay for the four years since his discharge.

He has been awarded one month's pay and an offer to permit his resignation and correction of his record.

Were he to have been reinstated in December 1979, or in early 1980, it would have been as a probationary employee and he again would have been subject to discharge on short notice should the employer have maintained his position as to Mr. Brigham's unsuitability for the job, which discharge under the procedures could have again occurred within a relatively short period of time. Accordingly, the relief sought by Brigham is clearly inappropriate and the record does not establish entitlement to any damages or relief other than that which has already been afforded. Ac-

cordingly, the decision of the trial court is affirmed.

No attorneys fees are awarded. Costs to the respondent.

DONALDSON, C.J., and BISTLINE, J., concur.

SHEPARD and BAKES, JJ., concur in result.

BAKES, Justice, concurring specially:

I concur with the result reached by the majority opinion and a substantial part of the analysis. However, I disagree sharply with the majority's statement, *ante* at 149, that "an employee's statutory rights are implicitly included in his or her contract of employment." Again, on page 151 the majority states, "The failure by the state to comply with the statutory procedure constitutes a breach of the employment contract." It is significant that the majority has cited no authority for this proposition. In contrast to the majority's assertions, the rights of a public employee are fully dependent upon statutory provisions which can be changed at will, and thus are not dependent upon any "contract of employment." *Miller v. State*, 18 Cal.3d 808, 135 Cal.Rptr. 386, 557 P.2d 970 (1977) ("public employment is not held by contract but by statute"); *Baker v. Civil Service Comm'n*, 245 S.E.2d 908 (W.Va.App.1978) ("public employment arises not by virtue of contract but by the terms and conditions fixed by statute ...."). *See Personnel Division of Executive Dept. v. St. Clair*, 10 Or.App. 106, 498 P.2d 809 (1972) ("[t]he terms and conditions of civil service employment are fixed by statute and the regulations of the state personnel agency, and not by 'contract' between the public employer and the individual employe."). *See also Morris v. Gonzales*, 91 N.M. 495, 576 P.2d 755 (1978); *In re Thaxton*, 78 N.M. 668, 437 P.2d 129 (1968). Even in situations where a state department does enter into a written contract with an employee, the contract cannot be inconsistent with the statutory provisions. *Miller v. State, supra; Boren v. State Personnel Board*, 37 Cal.2d 634, 234

P.2d 981 (1951). The majority's contract rationale is simply not applicable to state employees. Those rights are determined by statute and rules and regulations of the Idaho Personnel Commission. I believe that the majority errs seriously when it loosely suggests that appellant's statutory rights became a part of a contract of employment.