5 P.2d 988

Robin CLARK, Robert Bruce Doss and Bryan M. Johnson, Plaintiffs–Appellants,

v.

The STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, Defendant–Respondent,

and

Daniel S. Dike aka Daniel Scott Bohdan Omelan Dytchkowskyj, in his individual capacity; and Dia Gainor, in her individual capacity; and Richard H. Schulz, in his individual capacity; and Linda L. Caballero, in her representative capacity as Director of Idaho Department of Health and Welfare and her successors, Defendants.

No. 24928.

Supreme Court of Idaho,
Boise, January 2000 Term.

July 21, 2000.

Rehearing Denied July 21, 2000.

528

---

Garry L. Gilman, Boise, and William B. Latta, Boise, for appellants.

Hon. Alan G. Lance, Attorney General, Boise, for respondents. Ronald D. Christian argued.

SUBSTITUTE OPINION
THE COURT'S PRIOR OPINION DATED APRIL 11, 2000 IS HEREBY WITH-DRAWN

KIDWELL, Justice.

This appeal results from the district court's determination that even if the State of Idaho breached an employment understanding with the plaintiffs, the plaintiffs have no legal recourse because they were probationary state employees. We affirm the district court on different grounds.

## I.

### FACTS AND PROCEDURAL HISTORY

Robin Clark, Robert Bruce Doss and Bryan M. Johnson (appellants) were all employed by the Idaho Statewide EMS Communications and Poison Control Center at St. Alphonsus Regional Medical Center. In 1994, the Center was taken over by the Idaho Department of Health and Welfare, Emergency Services Bureau. Prior to the transfer of the Center, Dia Gainor, Chief of the Emergency Services Bureau, contacted appellants with an offer to transfer their positions to state employment.

Appellants accepted the offer and began working for the State as full-time employees on July 1, 1994. With the benefit of only draft copies of their job descriptions, appellants accepted employment as classified probationary employees on July 29, 1994. Seven days later, on August 5, 1994, appellants were called to their supervisor's office where they were met by a uniformed police officer.

The officer escorted them to State Communications Manager Dan Dike's office, where they were met by Gainor and Dike. There, appellants were told their employment would be terminated if they did not exercise their right to resign. Afterwards, each appellant was put on administrative leave with pay. Because the appellants were deemed probationary employees, they were not given the reason for their terminations. After the police officer had escorted appellants to the parking lot, Communications Center management placed a notice on the bulletin board that appellants were not to be allowed on the premises and that the police should be called in the event appellants were seen on the premises.

In response to these actions, appellants filed grievances on August 19, 1994. They claimed that the State had failed to provide them with evaluations of their work performance and failed to provide them with an opportunity to respond to the evaluations. The State countered that appellants did not have the right to grieve their terminations because they were probationary employees.

Appellants did not resign and were terminated from state employment on August 22,

1994. The termination letters stated that "unsatisfactory performance" was the reason for the terminations. On August 23, 1994, the State filled out evaluations for each of the appellants. Appellants appealed to the Personnel Commission, where the hearing officer ultimately decided that because appellants were terminated during the probationary period they had no right to appeal their terminations.

On August 2, 1996, appellants brought suit against the State in district court. Relevant to this appeal, the complaint alleged that the State had breached the appellants' employment agreement by not providing job descriptions or evaluations prior to their terminations. Following the disposition of other claims, this issue came before the district court on cross-motions for summary judgment.

The district court released its decision and order on July 2, 1998. In granting the State's motion for summary judgment the district court held that appellants were not entitled to recover because they had failed to prove they were entitled to damages. The court also held that appellants could not maintain a breach of contract claim by arguing that they were fired without good cause because probationary employees "are basically terminable-at-will."

Appellants appealed the grant of summary judgment on the issues relating to their breach of contract claim.

## II.

## STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court employs the same standard as used by the district court originally ruling on the motion. *Scona Inc. v. Green Willow Trust*, 133 Idaho 283, 286, 985 P.2d 1145, 1148 (1999). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When both parties file motions for summary judgment relying on the same facts, issues, and theories, essentially the parties stipulate that there is no genuine issue of material fact that would preclude the entering of summary judgment by the Court. *Lowder v. Minidoka Co. Joint Sch. Dist. No. 331*, 132 Idaho 834, 837, 979 P.2d 1192, 1195 (1999). This Court exercises free review over the entire record which was before the district court to determine whether either side is entitled to judgment as a matter of law. *Id.*

## III.

## ANALYSIS

### A. The State Was Not Required To Provide Appellants With Performance Evaluations Prior To Terminating Their Employment.

Appellants claim that the district court erred in following the rule from *Brigham v. Department of Health and Welfare*, 106 Idaho 347, 679 P.2d 147 (1984), that even though the State breached employment contracts with appellants, that appellants have no remedy. The State claims that the holding of *Brigham* is erroneous because state employees are governed by the Personnel System Act, not by common law contract principles.[1]

In order to resolve the issue, an examination of the *Brigham* decision is appropriate. Brigham was hired by State Hospital South as the director of maintenance and operations, even though he was not familiar with the type of boilers used at the hospital. *Brigham*, 106 Idaho at 349, 679 P.2d at 149. During the hiring interview, Brigham was told that he would be "expected to operate in a different fashion than the former maintenance director." *Id.* at 350, 679 P.2d at 150. Brigham was told more than once that his job performance was not adequate, although he was never given a job description or a formal evaluation. *Id.* at 349, 679 P.2d at

---

1. Admittedly there are other procedural grounds upon which this case may be decided. *See, e.g., James v. Idaho Dep't of Transp.*, 125 Idaho 892, 895, 876 P.2d 590, 593 (1994) (holding that an employee terminated during the probationary process is not entitled to grieve the basis of the termination). However, this Court will refrain from considering issues not raised on appeal.

149. After only four months on the job, Brigham was fired because his job performance was unsatisfactory. *Id.* After Brigham left state employment, his supervisor prepared an evaluation. *Id.*

When his administrative grievances through the Personnel Commission were denied, Brigham appealed to the district court. Following the district court's affirmance of the Personnel Commission's decision, Brigham appealed to this Court. *Id.*

After reviewing the statutory requirements of the Personnel System Act, the Court held that the State had breached its contract with Brigham by failing to provide him with a job description and an evaluation prior to his termination.[2] However, even though the Court found that the employment contract had been breached, it ruled that Brigham had no meaningful remedy. This determination was based on the fact that if Brigham was to be reinstated it would be as a probationary employee and he could again be fired on short notice. *Id.* at 351, 679 P.2d at 149. Furthermore, the Court ruled that Brigham was not entitled to damages or any other relief, beyond the one month's pay which he had already been awarded. *Id.*

■ In the present case, the State points out that since the time *Brigham* was released, the statutes relied upon by the Court in that case to determine probationary employee rights, have been amended.

When *Brigham* was decided, section 67–5309(i) of the Idaho Code provided for:

[A] rule establishing a probation period not to exceed a stipulated period of time, and for the appointing authority *to notify the commission and the employee in writing prior to the expiration of the probationary period* concerning satisfactory or unsatisfactory performance. Employees who during the probationary period are performing in an unsatisfactory manner my be asked to resign and, upon failure to submit such resignation, may be discharged without the right of appeal. The

appointing authority must notify the commission and the employee in writing in order for the probationer to become a permanent employee.

I.C. § 67–5309(i) (1981) (superseded) (emphasis added).

The version of I.C. § 67–5309(i) in effect at the time this case arose provided in pertinent part:

[A]nd for the appointing authority to provide the employee and the commission a performance evaluation indicating satisfactory or unsatisfactory performance *not later than thirty (30) days after the expiration of the probationary period.* The rule shall provide that if the appointing authority fails to provide a performance evaluation within thirty (30) days after the expiration of the probationary period, the employee shall be deemed to have satisfactorily completed the probation.

(1993 Idaho Sess. Laws ch. 104 § 1) (emphasis added).

Thus, the statute relied upon by the Court in *Brigham* has been amended to allow a state employer to provide an employment evaluation *after* the probationary period has ended. This Court has ruled that "[w]hen a statute is amended it is presumed that the legislature intended the statute to have a meaning different from the meaning accorded the statute before amendment." *Miller v. State (In re Miller),* 110 Idaho 298, 299, 715 P.2d 968, 969 (1986). Therefore, we hold that *Brigham* is not controlling on the facts of this case. Under clear statutory language, the State was not required to provide appellants with performance evaluations prior to terminating their probationary employment.

## B. Appellants Received Adequate Job Descriptions.

■ The district court held that *Brigham* required the State to provide job descriptions to the appellants prior to terminating the appellant's employment. The district court

---

**2.** The Court of Appeals followed this reasoning in *Soong v. Idaho Department of Health and Welfare,* 132 Idaho 166, 170, 968 P.2d 261, 265 (Ct.App. 1998), wherein it noted that the *"Brigham* Court held that the purpose of a job description and an

evaluation is to provide an employee a 'fair chance to meet the expectations of those who hired' him or her, as well as preclude an employer from making an 'arbitrary and capricious' decision."

held that even though the appellants "did receive draft copies of the job descriptions," the State breached its agreements by not providing appellants with "official job descriptions for their new positions."

In the *Brigham* decision, this Court held that "probationary employees are entitled to job descriptions and evaluations." *Brigham*, 106 Idaho at 350, 679 P.2d at 150. In reaching this conclusion, the Court relied on I.C. § 67–5309(a) and the fact that the State had provided Brigham with only an outdated job description prepared for his predecessor. *Id.* This job description was inadequate, reasoned the Court, because Brigham had been told that he would function differently from "the former maintenance director." *Id.*

At the time this case arose, I.C. § 67–5309(a) provided in pertinent part:

> The classification plan will include an appropriate title for each class, and *a description of duties and responsibilities of positions in the classes* and the requirements of minimum training, experience and other qualifications, suitable for the performance of duties of the position.

(1993 Idaho Sess. Laws ch. 104 § 1) (emphasis added).

The facts of the present case, however are distinguishable from the facts driving the *Brigham* decision. In this case, the appellants were not taking on the role of previous State employees, but rather they were the first State employees to operate the new State Communications Center. Because of the newly created jobs, the appellants were asked to give input into the creating of new job descriptions. During the process of drafting the new job descriptions, appellants were shown copies of drafts and asked for input.

In *Brigham*, the Court held that the job description was required as a "means of objective evaluation of Brigham's performance." *Brigham*, 106 Idaho at 350, 679 P.2d at 150. Brigham was judged according to a standard of performance on which he was not instructed. Under the facts of this case, however, appellants were not only instructed on the standard upon which they were to be graded, but they also helped to

create it. Thus, even though the State may have not completely finished the process, we hold that under these facts appellants were provided with sufficient job descriptions to satisfy the statutory requirements of I.C. § 67–5309(a). Thus, under the facts of this case, we hold that the State met its statutory requirement of providing appellants with adequate descriptions of their jobs.

### C. Because The State Acted Within The Guidelines Set Forth In The Idaho Personnel System Act, Appellants Are Not Entitled To Damages.

Appellants claim that the district court erred in holding that even though the State breached its employment contracts with the appellants, that appellants are not entitled to any damages per *Brigham*. Appellants claim that the portion of *Brigham* concerning damages is factually distinguishable from their claim.

Since we have held that the amended Personnel System Act does not require performance evaluations prior to termination, and that in this case appellants were provided with adequate job descriptions, it is not necessary for this Court to consider appellants' claim to damages.

### D. This Court Need Not Determine Whether Classified Probationary Employees Are At–Will Employees Of The State To Resolve This Appeal.

The district court found that "probationary employees are basically terminable-at-will." Appellants argue that this conclusion is in error because the State has limitations on its ability to terminate the appellants' employment without cause.

While an interesting question may be raised as to whether probationary classified state employees are at-will employees, this determination is not necessary to resolve this appeal. The district court, after placing an at-will label on the contract, proceeded to analyze the rights of the appellants under the terms of the statute, not under contract law. The district court ruled that appellants were probationary employees, subject to the "terms and conditions of public employment with the state of Idaho [as] set forth in the

Personnel System Act, Idaho Code § 67–5301 through 67–5342."

Thus, even if the district court's label of at-will employees was error, the court still applied the statutory provisions of the Idaho Code in resolving the issue. Since neither side has properly challenged the district court's ruling that appellants were subject to the requirements and limitations of probationary classified employees as described by the Personnel System Act, this Court will refrain from taking up the issue.

### E. The State Is Entitled To Attorney Fees On Appeal.

 Appellants argue that attorney fees should be granted if "the court finds in favor of the [appellants] and also finds that the state agency . . . acted without a reasonable basis in fact or law." I.C. § 12–117. However, we hold that the State did not act without a reasonable basis in law, since the State was not required to provide appellants with performance evaluations prior to termination and since the State met its statutory requirement of providing appellants with descriptions of their jobs.

The State, on the other hand, claims attorney fees under I.C. § 12–120. While the State has failed to cite to any subsection of I.C. § 12–120, it did cite the case of *Atwood v. Western Construction, Inc.*, 129 Idaho 234, 923 P.2d 479 (Ct.App.1996). Since the award of attorney fees in *Atwood* was granted under I.C. § 12–120(3), this Court holds that the State made an adequate request for attorney fees under that subsection. Therefore, since the State is the prevailing party in this appeal, we award the State reasonable attorney fees on appeal.

### IV.

### CONCLUSION

While this Court utilizes a different analysis than that of the district court, we affirm the district court's ruling on the basis set forth above. We hold that the State fulfilled its statutory requirement of providing appellants with adequate job descriptions. We further hold that the State was not required to provide appellants with performance evaluations prior to terminating their employment. Because the State did not breach any statutory requirements prior to terminating the appellants' employment, appellants are not entitled to damages. The State is awarded reasonable attorney fees and costs on appeal.

Chief Justice TROUT, Justices SILAK and SCHROEDER concur.

Justice WALTERS concurs, except as to part III E.

KIDWELL, Justice, dissenting as to part III E.

I respectfully dissent from the majority's award of attorney fees to the State because I believe the State failed to adequately request fees. The State claimed fees under I.C. § 12–120, but failed to cite the appropriate subsection, or argue how it applied. While the State did cite the *Atwood* case, its reference was to suggest that the employment in this case was statutory and not contractual. I believe the better policy is to require a citation to the particular subsection under which a request for attorney fees is made.

Justice WALTERS concurs.